Honorable Alan R. Cohen Acting Superintendent NYS Banking Department
You have asked whether a State-chartered mutual savings bank may, under certain conditions, enter into agreements with persons serving as both officers and trustees of the bank under which they would receive severance pay or be guaranteed employment for a fixed term.
According to your letter, these benefits have arisen recently in the context of the present financial difficulties afflicting State-chartered mutual savings banks. You informed us that within a period of less than one year, the State Banking Department in conjunction with the Federal Deposit Insurance Corporation (FDIC) has supervised the merger of six failing State-chartered savings banks and that you foresee the need for additional supervisory mergers in the near future. Further, you said that it is the practice of the FDIC to require the resignation of the two most senior executives of a failing bank as a condition of the grant of assistance to an acquiring institution. You relate that in response to a foreseen terminal situation, where within a short period a bank may undergo a supervisory merger or be subject to acquisition by another bank, the boards of trustees of certain banks have entered into agreements with currently employed senior executives granting severance pay benefits or guaranteeing employment for a fixed term. Typically, the severance pay benefits are payable in the event of a termination of employment that is not for cause. Termination under the terms of a supervisory merger or acquisition agreement would not normally be for cause. A fixed-term employment contract guaranteeing continued compensation in the event of a termination of employment under these circumstances would provide similar protection. Under the terms of several agreements providing these benefits that were forwarded by you, the stated benefit to the bank of granting these benefits is to assure the continued availability of employees deemed essential to effective management and conduct of the bank's business at a time when the possibility of bank failure could lead to their early departure. You question whether the granting of these benefits to persons serving both as officers and trustees is legal.
A trustee of a savings bank may not have any interest, direct or indirect, in the profits of the bank (NY Const, Art X, § 3; Banking Law, § 247[1][a]). Except as is specifically set forth in section 249 of the Banking Law, a trustee may not directly or indirectly receive any pay or emolument for any services rendered to the savings bank (id., § 249[1]). Trustees may, by affirmative vote of a majority of all the trustees, "receive reasonable compensation for service as an officer of the savings bank, provided his duties as officer require and receive his regular and faithful attendance at the savings bank" (id., § 249[2][b]). In a previous opinion, based upon the above provisions, we concluded that a bonus may not be paid to a person who is an officer and trustee of a savings bank (1955 Op Atty Gen 170). In our opinion, to be valid, the grant of severance pay or equivalent benefits must fall within the provisions of section249(2)(b) of the Banking Law.*
These benefits must amount to reasonable compensation for services actually to be rendered as an officer of the savings bank.
In determining what constitutes reasonable compensation, we believe it is helpful to look at the declaration of policy underlying the banking regulations. It is the declared policy of the State to supervise and regulate the business of all banking organizations so as:
 "to insure the safe and sound conduct of such business, to conserve their assets, to prevent hoarding of money, to eliminate unsound and destructive competition among such banking organizations and thus to maintain public confidence in such business and protect the public interest and the interests of depositors, creditors, shareholders and stockholders." (id., § 10).
We stated in our 1955 opinion that savings banks "by virtue of their character as mutual institutions functioning for the sole benefit of their depositors, are subject to a singularly high degree of propriety in the management of their affairs to the end that all their assets, in the form of income from investments, moneys of depositors, etc., are held for the benefit of their depositors only". With this in mind, it is our opinion that in defining "reasonable compensation", the protection of the interests of depositors is primary. Also, we believe that the provisions restricting the receipt of payments by trustees were intended to prevent favoritism and conflicts of interest, since the trustees manage and control all the affairs of the savings bank (id., § 246[1][a]; see 1976 Op Atty Gen 30). The board of trustees of a savings bank serves in the role of trustee of the funds of the bank's depositors (Hun v Cary, etal., 82 N.Y. 65, 70 [1880]).
The Banking Board is empowered to adopt rules and regulations in order to effectuate the provisions of section 10 and for certain other purposes (id., § 14). Your counsel has informed us that there currently are no regulations defining what constitutes reasonable compensation of persons who are officers and trustees of a savings bank, and none dealing with the question of severance pay and similar benefits. It is conceivable that the Banking Department may find, upon studying the subject, that the granting of severance pay or similar benefits does not under any circumstances sufficiently serve the interests of depositors of savings banks or that these benefits create an unacceptable potential for conflicts of interest among trustees. This could lead to a regulation declaring that these benefits do not constitute reasonable compensation and prohibiting their use. In the absence of such a regulation or a regulation defining the circumstances under which these benefits may properly be paid, and the amounts that may be paid, we believe their validity must be determined under section 249(2)(b) of the Banking Law.
We believe that severance pay or similar benefits constitute reasonable compensation under section 249(2)(b) only if, as a result of granting these benefits, the bank can reasonably expect to receive at least a commensurate benefit. Benefit should be measured by the extent to which the interests of the bank's depositors are protected or enhanced. Under this analysis, the benefits cannot be justified as payments for past services of the officer since the benefit would flow to the officer rather than to the bank. In return for the severance pay, the bank must reasonably expect some identifiable future benefit. We believe that this determination can be made only on a case-by-case basis. We will, however, without presuming that the Banking Department might not find that the granting of these benefits are always unjustified, attempt to provide some guidelines.
The grant of severance pay or similar benefits as part of a total compensation package in an initial employment contract might be reasonable. The argument in favor of validity is that the severance benefits are necessary in order to attract a highly qualified executive, especially during uncertain economic times. It might also be appropriate to show that the bank has reasonable prospects for survival with effective leadership and that the amount of the benefits would not exceed the expected benefit to the bank. At the other extreme, the grant of severance pay to a currently employed officer-trustee by a bank certain to be reorganized or acquired within a short period would appear primarily to benefit the employee rather than the bank. While effective leadership is important during this period, it is doubtful that the granting of severance pay can be justified on this basis. As such, the pay would not, under our definition, constitute reasonable compensation and would, therefore, be unauthorized.
Between these examples are banks whose futures are uncertain. While there may be a possibility of failure, there may also be a realistic chance for survival with effective management. Assuming that the trustees of the bank view current executives as being necessary for future survival, it may be in the overall interests of the bank to offer monetary incentives to encourage them to remain employed by the bank. To be granted these benefits, the officer-trustee's current terms of employment must not already offer adequate incentives to remain or penalties for resignation. Otherwise, there would be no consideration in return for the severance benefits and such benefits would constitute an unlawful gratuity. Also, the facts must indicate that if benefits are not granted, there is a real possibility that the officer will resign. A determination of whether the severance pay or similar benefits constitute reasonable compensation in these circumstances should also depend upon the amount of severance benefits when compared to the expected benefits to the bank.
The preceding discussion is concerned, of course, with severance pay as such. We note that your request for an opinion is limited to the question of the propriety of granting severance pay to officers who are also trustees. Our 1955 opinion discussed above makes a clear distinction between officers who are trustees and other officers and employees, but the distinction was closely tied to the concept that a bonus is a reward for having had a "profitable" year. And this, we said, was inconsistent with the specific prohibition against trustees having any interest in profits. Here, the question is whether severance pay is reasonable compensation. If severance pay is reasonable for officers as such, it would appear to be reasonable for a trustee who is also an officer receiving reasonable compensation. This would be true unless there is a relevant distinction between officers as a class and officers who are also trustees. You have suggested one: the FDIC requirement that the two senior executives of a failing bank resign if the FDIC assists in a takeover. If, upon a takeover, those two executives are the only ones whose positions are normally lost, a general severance pay plan would in fact be no more than a vehicle for providing additional compensation for their past services. If, however, the trustees of a savings bank can reasonably anticipate that a takeover might be followed, for example, by the closing of one or more branches and the consolidation of central office services, all resulting in the elimination of positions, a severance pay plan would have a purpose beyond providing for officers who are trustees. Moreover, under these circumstances, a severance pay plan may be essential for the preservation of morale and continued efficient operation up to the time of a takeover and, of course, beyond if the bank survives. We see no basis for automatically excluding officers-trustees from such a severance pay plan. Whether a particular plan meets these criteria depends, of course, on the relevant facts.
You have also asked about the significance of a resignation from the board of trustees of a person who is serving as both a trustee and an officer if the resignation becomes effective prior to the grant of severance pay or similar benefits. The board of trustees manage and control all the affairs of the savings bank (id., § 246[1][a]). In our opinion, the provisions of law restricting the receipt of payments by trustees were intended to prevent favoritism and the waste of depositors' money (supra). Therefore, the circumstances surrounding the resignation of the person as trustee and the subsequent grant of severance benefits should be examined to determine whether the matter is fraught with the evil that the statutory provisions seek to prevent. You have not asked nor do we pass upon what are the parameters of compensation for officers of savings banks who do not serve also as trustees.
Severance pay arrangements are subject to regulation under the Federal Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1002[2][B][i]). While ERISA preempts the regulation of employee benefit plans, an exception is established for any State law regulating insurance, banking, or securities (29 U.S.C. § 1144[a], [b][2][A]). In our opinion, action by the State Banking Department under the provisions of the Banking Law, restricting the granting of severance pay benefits to persons serving as both officers and trustees of savings banks, is a State regulation preserved by this provision (see 1976 Op Atty Gen 30). Such action is State regulation of banking designed to conserve the assets of savings banks and thereby protect the interests of depositors.
Severance pay or other similar benefits may be granted to persons who are officers and trustees of State-chartered mutual savings banks only if these benefits constitute reasonable compensation for services actually rendered as an officer of the bank. To be reasonable, in return for these benefits the bank must have a reasonable expectation of receiving at least a commensurate future benefit.
* Under section 250, a savings bank may provide pensions to its officers and employees "pursuant to a nondiscriminatory plan for service rendered to the savings bank". It appears from this language that severance pay available only to senior executives would not qualify as a pension. There must be a plan under which pensions are offered to officers and employees on a non-discriminatory basis.